```
            UNITED STATES DISTRICT COURT           FILED
            NORTHERN DISTRICT OF ALABAMA      97 DEC 10 PM 2:23
                   SOUTHERN DIVISION
                                                U.S. DISTRICT COURT
                                                  N.D. OF ALABAMA
```

|  |  |
|---|---|
| GAYLE A. PFLAUM | ) |
| Plaintiff | ) CV-97-L-242-S |
| vs. | ) |
| BELLSOUTH TELECOMMUNICATIONS, INC. ET. AL. | ) ENTERED  DEC 1 0 1997 |
| Defendants. | |



### FINDINGS OF FACT
### AND
### CONCLUSIONS OF LAW

This cause came on for a bench trial before this court, on November 18, 1997, upon the pleadings, the order of the pretrial conference, the testimony and exhibits, and the arguments of counsel. The Court enters the following findings of fact and conclusions of law:

### Findings of Fact

1. Plaintiff, Gayle Pflaum, was employed by BellSouth Telecommunications, Inc. ("BST") from 1976 until May, 1993.

2. BST offered its employees a Career Alternative Plan for

Management Employees ("CAP"). Management employees who voluntarily separated employment in order to pursue community service opportunities were qualified to apply for a separation benefit.

3. Management employees seeking participation in the CAP program must be a "regular full-time management employee of a participating company, below officer level (or equivalent), and actively at work or on a departmental leave not exceeding thirty (30) days. They must have at least eight (8) years of net credited service." BellSouth Career Alternative Plan Manual.

4. BST did not consistently insist on the "active work" requirement. Nor did it enforce the leave limitation found in the plan. An employee on an extended sabbatical leave of absence was able to be considered for and enrolled in CAP while still on leave. The Benefits officials typically performed a "paper transfer" of the employee's status. An employee on sabbatical, approved for CAP benefits, could go from her leave status to "active work" status and directly to CAP status without ever having to report back to work at the company.

5. According to BST's benefits program, the department from which the leave was granted is responsible for the employee's reinstatement. Reinstatement prior to expiration of the leave shall be based on mutual agreement between the employee and the company. BellSouth retained the authority to terminate the CAP program at any time, without the consent of its employees.

6. Plaintiff sought authorization for a sabbatical leave of absence. In May of 1993, BST granted her request.

7. Pflaum was notified by her supervisor, Ellen Edmonds, that her options upon completing her sabbatical included termination/resignation, return to a comparable position, extend the sabbatical or take part in the CAP program.

8. BST authorized an extension of her sabbatical until May 31, 1996. During her sabbatical, plaintiff understood herself to be a BST employee. BST considered her to be a BST employee on a sabbatical leave of absence. It was not until early 1996 that she learned that she had been or might be transferred to BellSouth Business Systems, Inc. Pflaum could not become a BBS employee unless she agreed to it upon reinstatement.

9. In March of 1996, Pflaum called BST in an attempt to apply for CAP benefits upon completion of her sabbatical. At that point BST did not consider her an employee. If she chose to come back, she could be reinstated with BBS on June 1, 1996. However, as of March 31, 1996, CAP benefits were not available to BBS employees. Plaintiff initially chose to return but later reversed that decision. Pflaum tendered her resignation on May 31, 1996.

10. Plaintiff would not have been a BST employee for purposes of CAP benefits at the end of her sabbatical. She would have been a BBS employee had she chosen to accept the BBS position starting June 1, 1996. In March of 1996, she was in

limbo.

11. In order to be eligible for CAP benefits, Pflaum had to be activated from her leave status. To be activated, she had to be reinstated to a department and company that had a job for her. The only place she could be reinstated was with BBS. The effective date of that reinstatement was two months after the window of CAP availability for BBS employees closed.

### Conclusions of Law

12. The court has jurisdiction of this action and of the parties thereto.

13. The BST CAP program, offered to BellSouth management employees is an employee welfare benefit plan. As such, controversies arising under it are governed by the provisions found in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1002 et. seq.

14. The court reviews the plan administrator's denial of CAP benefits under a de novo standard of review. Claim decisions are to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see Buckley v. Metropolitan Life, No. 96-6125, 1997 WL 307004, at *4 (11th Cir. June 24, 1997)(Stating that the same standards of review announced in Firestone apply to factual findings as well as plan interpretations).

15. Bellsouth was within its rights to deny Pflaum CAP benefits. She was not eligible for CAP benefits while on sabbatical. Upon reinstatement, had she so opted, she would not have been eligible. Until she was reinstated, what a human resources print-out indicated, which company sent her mail or gave her benefits information were irrelevant for purposes of applying for CAP.

16. At the relevant time, Pflaum was not entitled to receive CAP benefits.

DONE and ORDERED this 10th day of December, 1997

SEYBOURN H. LYNNE
SENIOR UNITED STATES DISTRICT JUDGE